UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KATHERINE J.,

           Plaintiff,

           v.                                            **DECISION AND ORDER**

                                                                          20-CV-845S

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

        1.        Plaintiff Katherine J.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits under Title II of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed her application with the Social Security Administration on February 22, 2017.  Plaintiff alleged disability beginning on April 20, 2015, due to obesity, epilepsy, lumbar spine facet arthropathy and disc displacement, degenerative disc disease of the cervical spine, temporal mandibular joints bilateral osteoarthritis, tension type headaches, and migraines.  Plaintiff's application was denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

        3.        On March 7, 2019, ALJ Theodore Kim held a video hearing at which Plaintiff—represented by counsel—and Vocational Expert Dian Haller appeared and

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

testified. (R.² at 34-73, 13.)  At the time of the hearing, Plaintiff was 36 years old on the amended onset date of February 23, 2016 (R. at 24, 15).  She has a high school education and past relevant experience as a direct support professional/resident care aide (medium exertion work (R. at 24).  The ALJ found that she could not perform this past work with her residual functional capacity and her level of skills (R. at 24).

4.     The ALJ considered the case *de novo* and, on April 29, 2019, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.³  (Docket No. 1.)

5.     Plaintiff moved for summary judgment⁴ (Docket No. 22) and Defendant moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure (Docket No. 25).  Plaintiff did not file a response.  This Court then took these Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion for Summary Judgment is denied, and Defendant's Motion for Judgment on the Pleadings is granted.

6.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there

---

²Citations to the underlying administrative record are designated as "R."

³The ALJ's April 29, 2019, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

⁴This Court will treat this Motion as a Motion for Judgment on the Pleadings, technically the proper vehicle under the Social Security Act for a decision on the merits of the Complaint, Wills v. Comm'r, No. 19CV428, 2020 WL 502452, at *1, n.3 (W.D.N.Y. Jan. 31, 2020) (Skretny, J.); see 42 U.S.C. § 405(g).

has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing

3

whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work.  Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C.

4

§ 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 23, 2016, the amended onset date. (R. at 15.) At Step Two, the ALJ found that Plaintiff has the following severe impairment: obesity, epilepsy, lumbar spine facet arthropathy and disc displacement, degenerative disc disease of the cervical spine, temporal mandibular joints bilateral osteoarthritis, tension type headaches, and migraines. Id. at 16. At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, with limitations. Plaintiff can occasionally reach overhead with both upper extremities. Plaintiff can frequently operate hand controls, reach in all other directions, push, pull, handle, finger, and feel with both upper extremities. Plaintiff also can occasionally kneel, crouch, stoop, balance, and crawl, can occasionally climb stairs and ramps, can never climb ladders, ropes, and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts. Plaintiff can tolerate occasional exposure to vibration. She can never be exposed to strobe lights, to flashing lights or to bright lights, such as those found on a theatre stage. Plaintiff requires a moderate noise work environment. Additionally, Plaintiff can understand, carry out, and remember simple instructions, and make simple work-related decisions. Plaintiff would be off task 5% of the workday. (R. at 18.)

13. At Step Four, the ALJ found Plaintiff is unable to perform any past relevant work. (R. at 24.) At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 24-25.)

14. The ALJ concluded that Plaintiff's ability to perform all or substantially all the requirements for light work was impeded by additional limitations (R. at 24). The ALJ posed hypotheticals to the Vocational Expert of a claimant with a similar age, education, work experience, and RFC. The expert opined that this hypothetical claimant could perform such occupations as office helper, mailroom sorter/clerk, or assembler, all light exertion work. (R. at 24-25.)

15. These jobs as defined in the Dictionary of Occupational Titles ("DOT") each require frequent reach capacity, but the DOT does not differentiate overhead reach from reaching in other directions as distinguished in the RFC (R. at 25). The ALJ accepted the expert's opinion based upon her "vast experience" and persuasiveness (R. at 25). Thus, the ALJ accepted that Plaintiff could perform as an office helper, mailroom sorter, or assembler (R. at 25). The ALJ also found that the expert's opinion was consistent with the DOT since it does not consider limitations for time off task, climbing ladders, ropes, and scaffolds, or overhead reaching the ALJ relied upon the expertise of the Vocational Expert to consider these restrictions (R. at 25).

16. Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 25-26.)

17. Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ failed to consider properly the RFC in discounting Plaintiff's subjective complaints of pain (Docket No. 22, Pl. Memo. at 21-25). Plaintiff next contends that the ALJ does not explain how Plaintiff's testimony about pain was inconsistent with

the found physical and mental limitations (id. at 23).  Finally, Plaintiff argues that the ALJ incorrectly considered her activities of daily living and missing the assistance she received in performing these activities (id. at 25).  For the reasons that follow, this argument is rejected.

18. Defendant replies that the ALJ properly evaluated Plaintiff's symptomology and alleged limitations, and the ALJ correctly concluded that the overall record did not support disabling impairment (Docket No. 25, Def. Memo. at 10).  Defendant contends that Plaintiff here seeks reweighing the evidence, a role inappropriate for judicial review (id.).

19. First, as for Plaintiff's complaints of pain and her migraine headaches, she complained that she had 28 migraines or headaches a week (R. at 240).  The ALJ, however, observed that she only obtained conservative medication for treatment (R. at 21).  The RFC also included impairments for Plaintiff's neck, spine, and lumbar spine (R. at 22).

20. Plaintiff argues that the ALJ did not consider her inability to function during her frequent headaches (Docket No. 22, Pl. Memo. at 23).

21. She also states she needed to alternate between sitting and standing and was uncomfortable after 20 minutes in each position, and she would need to lie down for five hours a day (Docket No. 22, Pl. Memo. at 24).

22. Defendant argues that the ALJ considered Plaintiff's history of migraines and her conservative treatment (Docket No. 25, Def. Memo. at 12, 13; R. at 20-21).  Plaintiff also had normal examinations.  Although she had 28 headaches a week, she had

migraines until she took medication (Docket No. 25, Def. Memo. at 13, 14-15; R. at 21, 240).

23. This Court is required to defer to the ALJ's assessment of Plaintiff's subjective complaints and evidence surrounding those complaints. The ALJ noted Plaintiff's history of migraines and headaches (R. at 21) which included treatment by conservative medication (R. at 21, 494, 525, 527). On July 15, 2016, for example, Dr. Kenneth Murray observed that Plaintiff still suffered from migraines which she treated with over-the-counter ibuprofen and declined "specific antimigraine medication" (R. at 525, 527).

24. Plaintiff reported headaches at numerous appointments, but medical staff examined her and found normal findings (R. at 669-70, 673-74, 770-71, 779, 783-84, 838-39, 843-44, 848-49, 1023; Docket No. 25, Def. Memo. at 13). Plaintiff had 28 headaches a week until she took medication (R. at 240).

25. This Court concludes that substantial evidence exists to support the ALJ's finding regarding Plaintiff's substantive pain complaints. While Plaintiff had frequent headaches and migraines, when treated by conservative medication they went away. Plaintiff's Motion for Summary Judgment (Docket No. 22) on this ground is denied.

26. Plaintiff next argues the ALJ erred in concluding that she was not disabled since she could perform activities of daily living (such as childcare, housekeeping) (Docket No. 22, Pl. Memo. at 25). She complains that she needed assistance from her husband and parents with childcare and other chores (id.).

27. Defendant points out that the ALJ acknowledged spousal and parental assistance with household chores (Docket No. 25, Def. Memo. at 15, 17; R. at 21, 232).

Nevertheless, Defendant concludes that the ALJ could discount Plaintiff's subjective complaints of pain with her perceived ability to perform activities of daily living (Docket No. 25, Def. Memo. at 17), Poupore v. Astrue, 566 F.3d 303, 307 (2d Cir. 2009).

28.    The ALJ's consideration of Plaintiff's daily activities are separate from consideration of the medical evidence for her migraines.  The ALJ's focus was on Plaintiff's conservative treatment of the migraines and not her ability to function despite her condition.  The ALJ concluded that after considering "the objective medical evidence, subjective statements made by the claimant and by third parties, and all opinions, the undersigned finds that the claimant's residual functional capacity as defined above accurately details the claimant's functional limitations" (R. at 23), without express emphasis on her daily activities.  Therefore, Plaintiff's objection on this ground lacks merit.

29.    Next, Plaintiff contends that the ALJ incorrectly relied upon the Vocational Expert despite the opinion was not supported by the DOT regarding her ability to reach (Docket No. 22, Pl. Memo. at 26-28).

30.    Defendant relates the questioning of the Vocational Expert and the DOT, explaining her opinion about overhead reaching, concluding that it satisfied the ALJ's obligation to address the conflict between the expert's opinion and the DOT (Docket No. 25, Def. Memo. at 19-20; R. at 62, 65-66).

31.    The vocational expert opined a hypothetical claimant could be an office helper, mailroom sorter, or assembler of electric accessories and perform these jobs despite reaching required to perform them from the expert's experience (R. at 25, 60-61, 62, 64-65).  The expert stated that the type of activities in these jobs did not require overhead reaching for more than a third of a workday (R. at 65).

9

32. The ALJ noted that the DOT did not differentiate between overhead reaching and reaching in other directions (R. at 25). Plaintiff cites to a companion publication from the agency, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO") (Docket No. 22, Pl. Memo. at 26). The SCO defines "reaching" as "extending hand(s) and arm(s) in any direction" (id. at 27, quoting SCO, App'x C (1993); see Selian v. Astrue, 708 F.3d 409 (2d Cir. 2013) (reaching includes upward reach)).

33. The ALJ asked the vocational expert if her testimony was consistent with the DOT (R. at 62). The expert answered that her opinion generally was consistent with the DOT except for the overhead reaching and off task time that was not addressed in the DOT (R. at 62, 65-66; Docket No. 25, Def. Memo. at 19, 20).

34. This explains any possible conflict the opinion has from the DOT. The ALJ elicited an explanation from the vocational expert to the conflict between the reach opinion and the DOT, satisfying the requirements of Lockwood v. Commissioner, 914 F.3d 87, 92-93 (2d Cir. 2019) (vocational expert's opinion regarding reaching and DOT definition); see Alisa O. v. Comm'r, No. 20CV564, 2021 WL 3861425, at *5 (W.D.N.Y. Aug. 30, 2021) (Geraci, J.), to hash out any possible conflict between that opinion and the DOT.

35. Defendant concludes that substantial evidence supported the Step Five finding and was free of legal error (Docket No. 25, Def. Memo. at 19-21).

36. This Court agrees. There is no error found in determining Step Five; after teasing out the opinion and DOT conflict, see Lockwood, supra, 914 F.3d at 93, the ALJ could rely upon the vocational expert's opinion about jobs Plaintiff could perform and then conclude that she is not disabled.

37.     Therefore, Plaintiff's Motion for Summary Judgment (Docket No. 22) is denied, and Defendant's Motion for Judgment on the Pleadings (Docket No. 25) is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Summary Judgment (Docket No. 22) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 25) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:    February 23, 2022
          Buffalo, New York

                                              s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              United States District Judge